IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| KENNETH SMITHERS, | : | |
|---|---|---|
| Plaintiff, | : | |
| | : | Civil Action No.: 5:05-cv-439 (CAR) |
| v. | : | |
| | : | |
| MICHAEL W. WYNNE, | : | |
| Acting Secretary of the Air Force, | : | |
| | : | |
| Defendant. | : | |

*ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT*

Plaintiff Kenneth Smithers ("Smithers") brings this action against the Secretary of the Air Force ("Air Force") alleging gender and age discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621. Smithers further alleges that the Air Force violated the Privacy Act of 1974, 5 U.S.C. § 552a, by failing to maintain accurate records, failing to provide him with a "core document," and falsifying his appraisal records. Before the Court are the Air Force's Motion to Dismiss [Doc. 7] and Motion for Summary Judgment [Doc. 23]. Through both motions, the Air Force argues that Smithers's claims are time-barred. Through its Motion for Summary Judgment, the Air Force additionally argues that Smithers's claims fail on the merits. Having considered the matter, the Court finds that the Air Force is entitled to summary judgment. Consequently, the Air Force's Motion for Summary Judgment [Doc. 23] is **GRANTED**, and its Motion to Dismiss [Doc. 7] is **DENIED AS MOOT**.

## BACKGROUND

Smithers is a retired civilian employee of the United States Air Force, formerly employed at Robins Air Force Base ("Robins AFB") in Warner Robins, Georgia. Smithers voluntarily transferred to Robins AFB in 1998 from Wright-Patterson AFB in Arlington, Virginia. While at Robins AFB, Smithers held the title of "Supervisory Logistics Management Specialist," a title with a corresponding pay grade of "GS-13." As a "Supervisory Logistics Management Specialist," Smithers worked in three different positions. Smithers first worked as the supervisor of the Integrated Process Team ("IPT") for H-60 helicopters. In that position, he supervised a team of 50 employees, who together oversaw the maintenance of a fleet of H-60 helicopters. Greg Stanley was Smithers's immediate supervisor, and Colonel Mason was his second-level supervisor. In 2000, Donald Michels replaced Colonel Mason as Smithers's second-level supervisor.

In January 2002, Smithers transferred to his second position: an administrative position in the Management Analysis / Planning division of the Logistics Department. In that position, Smithers was responsible for analyzing various personnel and staffing issues. (Def. Ex. 2.) Deb Inman was his immediate supervisor, and Donald Michels remained his second-level supervisor.

In May 2003, Smithers transferred to a third position. In his third position, Smithers worked for Colonel Chang and Lee Harris. He remained there until June 2004, when he retired due to heart problems.

Smithers alleges that throughout his employment at Robins AFB, Don Michels and other supervisors repeatedly "harassed" him by failing to recognize his various outstanding accomplishments and by giving him lower than deserved scores on annual performance

2

appraisals.[1] He attributes this harassment to his age[2] and gender. Smithers further avers that his supervisors' failure to recognize his accomplishments resulted in his non-selection for various promotions. Finally, Smithers alleges that when he ultimately complained about his supervisors' conduct to the Robins AFB EEO in April 2003, his supervisors retaliated against him. Specifically, he claims that his supervisors passed him over for two promotions to GS-14 positions in July 2003, and spoke poorly of him to other supervisors. Smithers learned that at least one supervisor—Michels— had spoken poorly of him to other supervisors in August 2003, when his then-supervisor, Colonel Chang, reported that Michels was "running him down." (Smithers Dep. 92-94.) Smithers also suspects Deb Inman of speaking poorly of him, but "ha[s] no proof." (Id. 92.)

On December 3, 2003, Smithers notified the Robins AFB EEO of his discrimination and retaliation claims. He filed a formal complaint of discrimination several days later, on December 15, 2003. Following the EEO's final resolution of his claims, Smithers filed the present lawsuit nearly two years later, on November 28, 2005.

Though not clearly articulated in his Complaint or Response brief, Smithers appears to assert the following Title VII and ADEA claims against the Air Force: (1) discrimination in the "terms and conditions" of his employment, based on his supervisors' failure to provide accurate performance appraisals and failure to recognize his accomplishments; (2) failure to promote,

---

[1] Smithers cites three particular projects for which he was denied recognition. First, he claims Michels failed to recognize his service as Chairman of the Combined Federal Campaign in 2001 and 2002. Second, Smithers claims that Michels failed to recognize his work in resolving a problem with rotor blade pins on H-60 helicopters, also in 2002. And finally, Smithers alleges that Michels failed to commend his efforts in 2002 in locating and identifying Korean Airlines as a secondary source to repair helicopters overseas—an initiative which saved the Air Force millions of dollars.

[2] Smithers was born on January 27, 1949.

3

based on his age and gender, and in retaliation for his April 2003 EEO activity; (3) hostile work environment, based on his age and gender and in retaliation for his April 2003 EEO activity. In addition to his Title VII and ADEA claims, Smithers asserts a "Privacy Act" claim, based on the Air Force's failure to maintain accurate records, failure to provide him with a "core document,"[3] and falsification of his performance appraisals.

In both its Motion to Dismiss and Motion for Summary Judgment, the Air Force argues that Smithers's Title VII, ADEA, and Privacy Act claims fail as a matter of law because they are time-barred. In the alternative, the Air Force contends that Smithers's claims fail on the merits.

## *SUMMARY JUDGMENT STANDARD*

Summary judgment must be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Johnson v. Clifton, 74 F.3d 1087, 1090 (11th Cir. 1996). Not all factual disputes render summary judgment inappropriate, however; only a genuine issue of material fact will defeat a properly supported motion for summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). This means that summary judgment may be granted if there is insufficient evidence for a reasonable jury to return a verdict for the nonmoving party or, in other words, if reasonable minds could not differ as to the verdict. See id. at 249-52.

In reviewing a motion for summary judgment, the court must view the evidence and all justifiable inferences in the light most favorable to the nonmoving party, but the court may not

---

[3] A "core document" is a document outlining the job responsibilities of an Air Force civilian employee, typically given to the employee by his supervisor. (Smithers Dep. 47.)

4

make credibility determinations or weigh the evidence. See id. at 254-55; see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and that entitle it to a judgment as a matter of law. Celotex, 477 U.S. at 323 (internal quotation marks omitted). If the moving party discharges this burden, the burden then shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact (i.e., evidence that would support a jury verdict) or that the moving party is not entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(e); see also Celotex, 477 U.S. at 324-26. This evidence must consist of more than mere conclusory allegations or legal conclusions. See Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). Ultimately, summary judgment must be entered where "the nonmoving party has failed to make a sufficient showing of an essential element of [his] case with respect to which [he] has the burden of proof." Celotex, 477 U.S. at 323.

*DISCUSSION*

**I.     Age and Gender Discrimination and Retaliation Claims**

Smithers asserts various interrelated age and gender discrimination and retaliation claims pursuant to Title VII and the ADEA. As a threshold matter, the Air Force argues that these claims are time-barred. Under Title VII and the ADEA, federal employees are required to initiate administrative review of any alleged discriminatory conduct with the appropriate agency within 45 days of the alleged discriminatory act. See 42 U.S.C. § 2000e-16; 29 C.F.R. §

1614.105(a)(1); Fitzgerald v. Henderson, 251 F.3d 345, 358-59 (2d Cir. 2001). This 45-day period "serves as a statute of limitations; thus, as a general rule, claims alleging conduct that occurred more than 45 days prior to the employee's initiation of administrative review are time-barred." Fitzgerald, 251 F.3d at 359; cf. City of Hialeah v. Rojas, 311 F.3d 1096, 1102 (11th Cir. 2002) ("If the victim of an employer's unlawful employment practice does not file a timely complaint, the unlawful practice ceases to have legal significance, and the employer is entitled to treat the unlawful practice as if it were lawful.").

In this case, Smithers notified the Robins AFB EEO of his discrimination claims on December 3, 2003, and filed a charge of discrimination on December 13, 2003. Therefore, for his claims to be timely, the acts of discrimination must have occurred on or after October 19, 2003. Much of the conduct about which Smithers complains occurred well before October 19, 2003. For instance, Michel's purported failure to recognize his accomplishments and Michel's issuance of poor performance reviews occurred between 2001 and 2002. Likewise, the Air Force's denial of various promotions occurred between 1999 and 2003, with the two latest denials occurring in July 2003. Thus, all of the foregoing conduct falls well outside of the 45-day limitations period, and any claim relating to this conduct is time-barred.

An exception to the general rule barring claims filed more than 45 days after the alleged discriminatory conduct arises in federal employee cases when the individual shows that he "did not know and reasonably should not have . . . known that the discriminatory matter or personnel action occurred." 29 C.F.R. § 1614.105(a)(2). Not surprisingly, Smithers attempts to avail himself of this exception, arguing that he did not realize that the Air Force's conduct was discriminatory until "a series of acts and policies began to suggest such a motive for the conduct

in this situation." (Pl.'s Resp. Br. 10.) Smithers, however, fails to identify with specificity the act(s) or event(s) that finally indicated to him that the Air Force's poor treatment of him was discriminatory. At the very latest, it appears that Smithers reasonably should have realized that he was the victim of age and race discrimination in May 2003, when he complained to the EEO about his appraisal score. At that time, Smithers reasonably should have recognized that his previous low appraisal scores and denials of recognition were part of the same pattern of discrimination. Therefore, Smithers's claims are not revived under this exception.

The "continuing violation" doctrine provides Smithers with an alternate means of circumventing the timely-filing requirement. Simply put, the "continuing violations" doctrine provides that "so long as one act falls within the charge-filing period, discriminatory and retaliatory acts that are plausibly or sufficiently related to that act may also be considered for the purposes of liability." See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002). The Supreme Court recently clarified the "continuing violation" doctrine in Morgan, by addressing "whether and under what circumstances a Title VII plaintiff may file suit on events that occur outside [the timely filing period]." Id. at 105. In resolving that question, the Court distinguished between claims involving "discrete acts of discrimination" and those alleging a hostile work environment.

The Court held that "discrete discriminatory acts" such as "termination, failure to promote, denial of transfer, or refusal to hire" are "not actionable if time-barred, even if they are related to acts alleged in timely-filed charges." Id. at 113-114. It reasoned that such acts are easily identifiable and each constitutes a "separate actionable unlawful employment practice." Id. at 114.

7

When discussing the timeliness of hostile work environment claims, however, the Court merited a relaxed approach, given that such claims, by their very nature, involve repeated conduct. Id. at 115. The Court noted that, with respect to such claims, the "unlawful employment practice cannot be said to occur on any particular day[, but] occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." Id. at 115. Accordingly, the Court concluded that, unlike with discrete acts, "consideration of the entire scope of [the hostile work environment] claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period." Id. at 122.

Smithers argues that all of his claims are subject to the "continuing violation" doctrine because the events giving rise to those claims took place over an extended period of time. Morgan forecloses this argument. Smithers's claims relating to the Air Force's failure to recognize his accomplishments, failure to award adequate appraisal scores, and its failure to promote him, are discrete acts of discrimination. See Morgan, 536 U.S. at 114 (characterizing "termination, failure to promote, denial of transfer, and refusal to hire" as "discrete acts").

Only Smithers's hostile work environment claim may be considered timely under Morgan. This claim, however, will only be timely if at least one act occurred within the limitations period. Most of the conduct relating to Smithers's hostile work environment claim occurred in August 2003, when Colonel Chang informed Smithers that Michels had spoken poorly of him to other supervisors. Yet, one act relating to Smithers's hostile work environment claim—a telephone call from Colonel Chang on December 10, 2003—occurred within the

8

limitations period. Therefore, Smithers's hostile work environment claim is timely under Morgan.

Even though Smithers's hostile work environment claim is timely, it fails on the merits. A hostile work environment claim under Title VII is established upon proof that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). To survive summary judgment on a hostile work environment claim, therefore, a plaintiff must show that (1) he belongs to a protected class; (2) he has been subject to unwelcome harassment; (3) the harassment was based on a protected characteristic, such as age or gender, or based on engagement in protected conduct, such as filing an EEO grievance; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) the employer is responsible for the harassment under either a theory of vicarious or direct liability. See Id.

Smithers's hostile work environment claim is based on Michel's comments, of which Smithers learned in August 2003. Smithers has failed, however, to show that these comments were sufficiently severe or pervasive to alter the terms or conditions of his employment. In assessing whether comments are sufficiently severe or pervasive to support a hostile work environment claim, courts employ both an objective and a subjective test. Id. at 1276. That is, the comments must result in "both an environment that a reasonable person would find hostile and abusive, and an environment that the victim subjectively perceives to be abusive." Id.

9

(internal quotations and alterations omitted). Michel's comments satisfy neither test. First, the comments are not objectively abusive: they were not directed at Smithers; instead, he learned of them from Colonel Chang. Under a totality of the circumstances test, which courts employ in assessing the objective severity of an employee's harassment, no reasonable person would find such second-hand gossip sufficiently severe and pervasive so as to alter Smithers's working environment. Compare id. (racial slurs directed at an employee 3-4 times a day on a daily basis for approximately one month were "severe and pervasive"). Second, the comments were not subjectively severe: Smithers admits that he has no knowledge of the substance of Michel's comments. (Smithers Dep. 93-94.) At most, Smithers knows that Michel's negative comments pertained to his appraisal and EEO grievance. (Id. 93:16.) Because Michel's comments were neither objectively nor subjectively severe or pervasive, they fail establish a hostile work environment. Smithers's hostile work environment claim, therefore, fails as a matter of law.

## II. Privacy Act Claims

In addition to his Title VII and ADEA claims, Smithers asserts various claims under the Privacy Act. Like his Title VII and ADEA claims, however, Smithers's Privacy Act claims are time-barred. The Privacy Act "governs the government's collection and dissemination of information and maintenance of its records." Perry v. Bureau of Prisons, 371 F.3d 1304, 1304 (11th Cir. 2004). Under the Act, "whenever any agency fails to maintain any record concerning any individual, the individual may bring a civil action against the agency" in federal court. Id. (internal alterations omitted) (citing 5 U.S.C. § 552a(g)(1)(C)). The statute of limitations applicable to a Privacy Act claim is two years from the date on which the cause of action arises. 5 U.S.C. § 552a(g)(5). A cause of action "arises" under the Privacy Act when the aggrieved

10

individual knows or has reason to know of the alleged violation.  Davis v. U.S. Dep't of Justice, 204 F.3d 723, 726 (7th Cir. 2000); see also Doe v. Nat'l Sec. Agency, 165 F.3d 17, 1998 WL 743665, at *2 (4th Cir. 1998).

In his complaint, Smithers alleges that his Privacy Act claims are based on the Air Force's failure to maintain accurate records, failure to provide him with a core document, falsification of appraisal records, and waiver of core requirements.  (Pl.'s Compl. ¶ 37.)  Thus, the critical issues in determining whether Smithers's Privacy Act claims are time-barred are: (1) when Smithers learned of the inaccuracies in his records and (2) when Smithers learned of the Air Force's failure to give him a core document.  Smithers's Response brief says little, if anything, about when Smithers learned of the inaccuracies in his records.  (See Pl.'s Resp. Br. 5.)  In fact, Smithers makes absolutely no argument as to why his claims are not barred by the Privacy Act's two-year statute of limitations.  (See id.)  Instead, in the short paragraph he devoted to his Privacy Act claims, Smithers focuses on why certain conduct amounts to a Privacy Act violation.  (See id.)

Notwithstanding Smithers's failure to discuss the timeliness of his Privacy Act claims, the Court finds his claims to be time-barred.  First, regarding Smithers's claims that the Air Force failed to maintain accurate records and falsified his appraisal records, the evidence in the record establishes that Smithers would have first learned of the alleged inaccuracies in his records in April of 2001, 2002, and 2003, when he received his annual performance appraisals.  Second, regarding Smithers's claims that the Air Force failed to give him a core document, the evidence in the record shows that Smithers supposedly received a core document each time he received an annual performance appraisal.  (Smithers Dep. 50-51, 84-85, 88).  In fact, Smithers

11

admits that he did receive a core document with each performance appraisal, however, he complains that the document was never explained to him. (Smithers Dep. 85). Thus, as with his "inaccurate records" claim, Smithers reasonably should have known of his "core document" claims on the date each year that he received the document. Because Smithers filed suit in November 2005, more than two years after he learned both of the inaccuracies in his appraisal records and of the failure to explain his "core documents," his Privacy Act claims are time-barred.

Even assuming Smithers did not know of the inaccuracies in his personnel file until he received the file in July 2004 pursuant to an open records request, his claim still would fail. "The relevant fact is not when the plaintiff first had physical possession of the particular records, but rather when he first knew of the existence of the [inaccurate] records." Diliberti, 817 F.2d at 1262-63.

Smithers's failure to timely file a suit in federal court complaining of the Air Force's Privacy Act violations bars his Privacy Act claims. Accordingly, the Air Force is entitled to summary judgment on those claims.

## *CONCLUSION*

For the reasons discussed above, the Air Force's Motion for Summary Judgment [Doc. 23] is **GRANTED**, and its Motion to Dismiss [Doc. 7] is **DENIED AS MOOT**.

**SO ORDERED**. This 28th day of March, 2007.

S/ C. Ashley Royal
C. ASHLEY ROYAL
UNITED STATES DISTRICT JUDGE

AEG/jab